Filed 8/25/15  P. v. Martinez CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B254382 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA411467) |
| v. | |
| DANIEL Z. MARTINEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Paul T. Suzuki, Judge.  Affirmed.

Craig C. Kling; Caneel C. Fraser, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Noah P. Hill and Garett A. Gorlitsky, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Daniel Z. Martinez appeals from the judgment entered following his conviction by jury of assault with a deadly weapon, with personal infliction of great bodily injury. (Pen. Code, §§ 245, subd. (a)(1), 12022.7, subd. (a)(1).) The court sentenced appellant to prison for seven years. We affirm.

## FACTUAL SUMMARY

1. *People's Evidence.*

Alexander Sandoval (Sandoval) and his wife Flor had two daughters. At some point, appellant began living with the Sandovals in their apartment. After a few months, appellant and Flor apparently had an affair. In 2012, Sandoval made Flor and appellant leave. Quinten Welch rented an apartment in another apartment building. After March 2013, Flor, appellant, and a man stayed in Welch's apartment.

In May 2013, Angeleen, Sandoval's 10-year-old daughter, lived with Sandoval. Sandoval did not want his daughters to go to Welch's apartment once Sandoval learned it was not appellant's apartment. Moreover, Sandoval testified that early in May 2013, Angeleen told Sandoval she had seen appellant smoking "a piece of . . . clear glass with a bowl on the tip." Angeleen testified she had seen a "little bowl where people do smoking." Sandoval was concerned for Angeleen's safety and knew appellant had many friends. Sandoval told Flor he did not want Angeleen in that environment.

On May 13, 2013, Sandoval learned Flor and Angeleen were at Welch's apartment. Sandoval was upset because the location was unsafe and he believed appellant was selling drugs. After Angeleen's school day was over, Sandoval drove to Welch's apartment to get her. After Sandoval arrived, Flor was between two of the building's gates. Sandoval could not enter.

Sandoval, upset and using profanity, argued with Flor. Sandoval was telling Flor he had told her not to bring Angeleen there because it was unsafe. Sandoval was banging on the door and making a scene to create problems for Flor and appellant. The apartment manager's office was nearby and Sandoval wanted the manager to know the person living in the apartment where Flor and appellant were staying was selling drugs.

2

Later, Sandoval and Angeleen were leaving when appellant yelled, "Hey." Sandoval was standing across the street by his truck. Sandoval approached appellant to talk and thought appellant was going to talk. As Sandoval approached appellant, appellant pulled out a knife and said, "You fucking bitch." Appellant began running towards Sandoval and trying to stab him.

Sandoval began running backwards. Appellant was swinging the knife and trying to kill Sandoval. Sandoval used his left forearm defensively. Appellant stabbed Sandoval in his stomach and left arm. Sandoval was not holding a knife and had no weapon. Sandoval's truck contained construction tools, including some usable as weapons, and including knives, but Sandoval did not obtain any of these before approaching appellant.

As a result of the knife attack, Sandoval suffered an approximate 1.5 centimeter laceration to his abdominal wall, three lacerations to his left forearm (one 6-inch laceration and two 4-inch lacerations) and a laceration to his finger. A video and photographs pertaining to the incident were introduced into evidence.

After the knife attack, Sandoval went to get Angeleen, who was with Flor near the gate. Sandoval and Angeleen went to his truck. Sandoval saw appellant's cell phone in the street and heard someone say pick it up. Flor went to pick it up but Sandoval exited the truck and grabbed the cell phone. Sandoval saw appellant running towards him and getting something out of appellant's pocket. Sandoval did not want to fight so he threw the cell phone on the ground, smashing the phone. Sandoval and appellant fought again. June Jackson, the apartment manager, called the police. Appellant fled.

Sandoval also testified appellant went to a male and Flor, Flor told appellant to leave, and appellant gave something to the male. The male quickly entered the building and appellant fled. On May 20, 2013, Los Angeles police went to Welch's apartment. Police found appellant hiding in a closet and arrested him. Angeleen testified she had never seen Sandoval hit Flor. Jackson testified she initiated eviction proceedings against Welch based on "unauthorized guests and . . . drug sales taking place and drugs being used in the apartment."

3

2. *Defense Evidence.*

In defense, Flor testified as follows. Angeleen never told Flor that Angeleen had seen appellant smoking out of a pipe. Sandoval never told Flor that he did not want Angeleen around Welch's apartment because Angeleen had told Sandoval that Angeleen had seen appellant smoking out of a pipe. Flor had never seen appellant or Welch smoke out of a pipe in Welch's apartment.

On May 13, 2013, Flor left Angeleen downstairs for Sandoval to pick up. Flor closed the gate, afraid Sandoval would hurt Flor. Sandoval was yelling at Flor, saying, inter alia, "I hate you, you fucking bitch. I'm going to kill you, you fucking bitch." Flor called appellant for help while Sandoval was at the door banging on the gate and yelling.

Sandoval escorted Angeleen to his truck. It appeared Sandoval was leaving. Appellant exited a side door. Flor did not remember whether she had any contact with appellant as he left the building and went towards the street. Appellant and Sandoval fought, and Angeleen tried to intervene. Flor was near appellant and Sandoval but she focused on Angeleen. Flor was six to eight feet from the fight and did not see appellant holding a knife. Flor testified Sandoval received the cuts on his arm during the fight. On May 14, 2013, Flor went back to live with Sandoval but was still afraid of him.

Sandoval had assaulted Flor in the past, even before her relationship with appellant. In December 2012, Sandoval, using a knife, tried to kill Flor in the presence of her parents and children. In about April 2013, Sandoval assaulted Flor. On May 13, 2013, after the present stabbing incident, Flor reported the April 2013 incident to police. At time of trial, Flor was in a relationship with appellant and wanted to be with him.

### ISSUES

Appellant claims (1) the trial court erroneously admitted Jackson's testimony that Welch was evicted for drug use and sales in Welch's apartment where appellant was staying, and that Welch became "high" after appellant moved in, and (2) the trial court erroneously refused to instruct on defense of another.

4

*DISCUSSION*

1. *The Court Did Not Err by Admitting Jackson's Challenged Testimony.*

    a. *Pertinent Facts.*

       (1) *Appellant's Opening Statement.*

During opening statement, appellant indicated as follows. Sandoval previously had victimized Flor with threats, violence, and weapons. He unsuccessfully tried to prevent her from letting appellant interact with the daughters. On May 13, 2013, when Sandoval learned Flor had picked up Angeleen from school and had taken her to appellant's residence, Sandoval flew into one of his rages. Sandoval was looking for a fight.

Sandoval arrived at Welch's apartment building as Flor was leaving, and Sandoval was hurling threats and abusive language towards her. She retreated behind a gate but that did not stop Sandoval's explosion of anger towards her. Sandoval was banging on the gate and yelling to humiliate Flor. Flor had told appellant about Sandoval's history of violence towards Flor. Flor called appellant for help and appellant came outside to assist her. Sandoval ran towards appellant.

During opening statement, appellant indicated Sandoval would try to portray himself as the victim. Appellant did not, during opening statement, claim Sandoval had a knife. Instead, appellant's counsel stated, "[Sandoval] is probably going to tell you that he didn't have any kind of weapon that day. You can decide for yourself how credible that is." Appellant indicated Sandoval started the fight because Sandoval's ego had been wounded.

       (2) *Admissibility Proceedings Regarding Jackson's Proposed Testimony.*

Prior to Jackson's testimony for the People, the court and parties discussed the admissibility of testimony by Jackson that Welch had been evicted because of drug sales. The court indicated the proposed testimony was very relevant because (1) evidence drugs were being sold in Welch's apartment supported Sandoval's belief drugs were being sold there, (2) evidence of that belief was relevant to show that Sandoval's state of mind in going to the apartment was "to extricate [Angeleen]," and

5

(3) that state of mind was relevant to the issue of whether Sandoval was the initial aggressor in the later fight. Appellant indicated he would not, through defense questions, attack the "basis" or "reasonableness" of Sandoval's belief appellant was selling drugs.

The court observed appellant had indicated during opening statement Sandoval had a history of domestic violence and appellant had run outside to protect Flor. The court indicated it appeared Sandoval's motive in going to the apartment was to try to "get his kid out of a drug environment." The court ruled it would permit questioning of Jackson regarding Welch's eviction and its basis.

(3) *Jackson's Trial Testimony.*

During direct examination at trial, Jackson testified she initiated eviction proceedings against Welch for "unauthorized guests and . . . drug sales taking place and drugs being used in the apartment." Appellant posed foundation, hearsay, and Evidence Code section 352 objections that the court overruled. The prosecutor asked Jackson what she saw that made her decide to rely on drug sales as a basis for eviction. Jackson replied, "Well, I didn't personally see it." The prosecutor later asked if Jackson had ever seen a controlled substance or narcotic inside Welch's apartment. Jackson replied yes. The prosecutor asked what Jackson saw, and she replied, "Pipe, [marijuana], and then I smelled drugs, [marijuana] on a number of occasions when I have gone into the apartment . . . ."

The prosecutor asked what, besides what Jackson had observed, gave her the impression drug sales or drug use was occurring. She replied, "on a number of occasions, like I said, when I go up for repairs, I have seen drugs. And . . . I have smelled drugs." The following later occurred: "Q Did you witness . . . behavior by the individuals that were staying in [Welch's apartment] that suggested to you that there could be drug use going on? [¶] A Yeah. When you can tell a person is high, . . ."

6

The prosecutor asked, "[w]hen you said you can tell a person is high, what did you see?" Jackson replied she was basing this on when Welch first moved in and "the condition of [Welch's] behavior." Jackson observed Welch's behavior when he first moved into the apartment. Welch's behavior changed drastically after appellant, his girlfriend, and a male began staying there. The prosecutor later asked Jackson if, about May 2013, she had seen any of the individuals in Welch's apartment "appear . . . to be high off of marijuana." Jackson replied yes.

During its final charge to the jury, the court gave the following limiting instruction (a modified CALCRIM No. 303): "During the trial, certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other. The following evidence was admitted for the following limited purposes: [¶] . . . [¶] 3. As to any evidence of drug usage and or drug sales at [appellant's] residence, you may . . . consider such evidence only to determine the state of mind of . . . Sandoval in determining who was the initial aggressor."

b. *Analysis.*

Appellant claims the trial court erroneously admitted Jackson's testimony (1) Welch was evicted for drug use and sales in Welch's apartment where appellant was staying and (2) Welch became "high" after appellant moved into the apartment. We disagree.

Appellant argues, "First, it is important to note that, though [Jackson's] . . . testimony addresses why Welch was evicted, the acts resulting in the eviction were clearly being attributed to appellant. Appellant was, therefore, portrayed to the jury as both a drug user and dealer and a bad influence. He was further portrayed as the person who encouraged or caused Welch to use drugs." We reject the argument. The "acts" resulting in the eviction were not attributed to appellant. Jackson did not testify appellant was a drug user or drug dealer. The only person Jackson specifically named as using drugs was Welch, and then indirectly when she testified he got "high."

7

To the extent Jackson's testimony indicated appellant was a bad influence or encouraged or caused Welch to use drugs, the testimony was relevant to show she believed Welch used drugs in his apartment. Evidence of Jackson's belief about drug use in Welch's apartment corroborated Angeleen's implied testimony pertaining to Angeleen's beliefs. Angeleen testified to the effect she told Sandoval she saw appellant using drug paraphernalia to smoke. Angeleen also testified she saw a little bowl where "people" do smoking. Whether or not Angeleen saw these things or accurately related them, her testimony implied she believed she had seen them. In turn, her testimony explained why she told Sandoval, in effect, she saw appellant using drug paraphernalia to smoke.

Angeleen's testimony to the effect she *told* Sandoval she saw appellant using drug paraphernalia to smoke was relevant to show that Sandoval's state of mind in going to the apartment was to extricate Angeleen from what he believed (whether or not what he believed was true) was an unsafe, drug-infested environment. That state of mind evidence was relevant to negate the inference Sandoval went to the apartment looking for a fight and as the initial aggressor in the ensuing fight. Evidence Sandoval was not the initial aggressor was evidence negating appellant's defense of self-defense.

Second, appellant argues "any evidence related to drug sales from Jackson was hearsay." However, "'Hearsay evidence' is evidence of a *statement* that was made other than by a witness while testifying at the hearing and that is *offered to prove the truth of the matter stated*." (Evid. Code, § 1200, subd. (a), italics added.) Appellant points to no testimony by Jackson relating a "statement" about drug sales. Her testimony was based on her personal observations in Welch's apartment.

Moreover, as discussed, the trial court gave a limiting instruction that effectively told the jury any evidence of drug sales at the apartment was admitted for the limited purpose of permitting the jury "to determine the state of mind of . . . Sandoval in determining who was the initial aggressor." That is, any testimony by Jackson, or other evidence, of drug sales occurring at the apartment was not "offered to prove the truth of the matter asserted." We reject appellant's hearsay argument.

8

Third, appellant argues Jackson's testimony was inadmissible evidence of uncharged misconduct by appellant, introduced to portray him as a drug dealer and person who influenced Welch to use drugs. Appellant suggests it was clear at trial Sandoval would testify as to his belief drugs were being sold from Welch's apartment and would testify as to the reasons underlying Sandoval's actions, and appellant asserts he had agreed at trial on the record not to challenge Sandoval's "belief" drugs were being sold from Welch's apartment.

However, as previously discussed, Jackson did not testify appellant was a drug dealer. Her testimony was part of the evidence admissible to show Sandoval's state of mind. Moreover, appellant indicated to the trial court appellant would not, through defense questions, challenge the basis or reasonableness of Sandoval's belief appellant was selling drugs. Appellant did not state he would not challenge through defense questions whether Sandoval harbored that belief.

Further, whether or not appellant agreed at trial not to attack, through defense questions, Sandoval's state of mind or its basis, appellant effectively attacked Sandoval's state of mind during appellant's opening statement. Appellant's opening statement portrayed Sandoval, not as a concerned father going to Welch's apartment to extricate Angeleen from what Sandoval believed was an unsafe environment, but as a man going there looking for a fight because Flor had left him. The trial court was entitled to consider, as it did, appellant's opening statement when considering the issue of the admissibility of Jackson's testimony. (Cf. *People v. Whisenhunt* (2008) 44 Cal.4th 174, 204.) We reject appellant's third argument. And the trial court did not abuse its discretion by failing to exclude the challenged testimony under Evidence Code section 352. (See *People v. Waidla* (2000) 22 Cal.4th 690, 724.) The challenged testimony was admissible.

9

Finally, there is no real dispute Sandoval suffered severe lacerations on his stomach and arms, caused by a knife. The People's evidence was appellant used a knife to cause the lacerations. He later fled, evidence of consciousness of guilt. There was evidence suggesting he gave the knife to a friend, i.e., evidence suggesting concealment of evidence and consciousness of guilt. Police later found appellant hiding in a closet, further evidence of consciousness of guilt. On the other hand, the defense evidence through Flor was she never saw appellant with a knife.

The video and photographs of the stabbing incident (discussed below) considered with the rest of the evidence in this case, present independent overwhelming evidence of appellant's guilt. Any trial court error in admitting Jackson's challenged testimony, including any testimony about drug sales, was not prejudicial under any conceivable standard. (Cf. *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*); *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*).)

2. *The Trial Court Did Not Err by Refusing to Instruct on Defense of Another.*

During discussions regarding jury instructions, appellant asked the court to instruct the jury on defense of another, i.e., Flor. Appellant's counsel argued, inter alia, when appellant left the apartment building, he had no visible contact with Flor, it was impossible to know whether he saw her, and Flor could not remember whether appellant and Flor interacted; therefore, appellant did not know Flor was not in danger and was not in Sandoval's truck. The prosecutor argued there was insufficient evidence to support the requested instruction. The court agreed and refused appellant's request.

Appellant claims the trial court's refusal was error. He argues the court should have instructed on defense of another using, e.g., that portion of CALCRIM No. 3470 that instructs on that issue. We reject the claim. Defense of another can be a defense against assault with a deadly weapon. A defendant is not guilty of assault with a deadly weapon if the defendant used force against an assailant in lawful defense of another. The defense requires the defendant (1) reasonably believe another person is in imminent danger of suffering bodily injury, (2) reasonably believe the immediate use of force is

10

necessary to defend against that danger, and (3) use no more force than is reasonably necessary to defendant against that danger. (CALCRIM No. 3470.)

There is no dispute appellant repeatedly attacked Sandoval with a knife; appellant is arguing he was entitled to an instruction on the issue of whether he used such force in defense of Flor. The People's evidence was Sandoval was unarmed. The circumstantial defense evidence Sandoval was armed, including the evidence his truck contained knives and tools usable as weapons, was weak.

Moreover, we have viewed People's exhibit Nos. 1 and 13, video and photographs, respectively, taken by cameras at Welch's apartment building. Viewed in the context of the evidence in this case, they show Sandoval escorting Angeleen across the street. Neither exhibit depicts Sandoval ever holding a knife or any weapon. The exhibits also show the following. A ramp for the handicapped begins on the left after one exits the front of the building, and the ramp descends to the left and parallel to the sidewalk. The ramp descends to an open gate (hereafter, gate) in the perimeter fence, permitting access to the sidewalk.

Shortly after Sandoval escorts Angeleen across the street, appellant and Flor concurrently appear in front of the building and approach each other and the gate from opposite directions. Flor is descending the ramp. After appellant exits the gate, he reaches in the area of his right back pants pocket (where his shirt is partially raised) while walking on the sidewalk towards the street and Sandoval. Sandoval, who originally was across the street and in front of the building's front entrance, begins walking directly towards appellant and the gate. Sandoval is *not* walking directly towards Flor.

Appellant begins running into the street and towards Sandoval. When appellant begins running, Flor begins running down the ramp. *During the entire time Flor is on the ramp, a handrail, a landscaped area, the perimeter fence, the sidewalk, then vehicles parked at the curb, are between Flor and Sandoval,* the latter of whom is in the street. When appellant begins running into the street towards Sandoval, Sandoval retreats, and the two face each other fighting as appellant makes *jabbing motions* and Sandoval retreats further into the street and to a location more nearly in front of the building's front

11

entrance. Once Flor begins running down the ramp towards the gate, she has to *run away* from appellant and Sandoval, who are fighting in the street and moving away from the gate. Flor continues running to the gate and exits, then runs in the opposite direction *to appellant and Sandoval* in the street, *in an attempt to intervene*.

A trial court is under no duty to give an instruction unsupported by substantial evidence. (Cf. *People v. Tufunga* (1999) 21 Cal.4th 935, 944.) We agree with the trial court there was insufficient evidence to warrant an instruction on defense of another. The trial court did not err by refusing to instruct on that defense.

Moreover, CALCRIM No. 3470 also instructs on self-defense and the trial court used CALCRIM No. 3470 to instruct the jury on that issue. Appellant argues, inter alia, "Because there was sufficient evidence to support a self-defense instruction relating to appellant, the evidence equally supported a defense of another instruction related to Flor." However, even if there was substantial evidence of self-defense, the jury, by its verdict, rejected any evidence of self-defense. Further, the video and photographs of the stabbing incident, considered with the rest of the People's evidence in this case, present overwhelming evidence of appellant's guilt. Any trial court error in refusing to instruct on defense of another was not prejudicial. (Cf. *Watson, supra,* 46 Cal.2d at p. 836; *Chapman, supra,* 386 U.S. at p. 24.)

## *DISPOSITION*

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

EDMON, P. J.

EGERTON, J[*].

---

[*]      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13